Ms. Wall May it please the court, counsel, good morning. My name is Dawn Wall and I represent Amanda Burger in this case. Amanda Burger stated a viable claim for deprivation of her constitutional rights in count three of the first amended complaint. She asserted in that count that her rights were deprived under the due process clause of the 14th amendment for the interference with her right of intimate association with her husband. I have a question that's similar to the question I asked in the last case. Though it's not quite the same because this is an action that may be seeking injunctive relief as well as damages. But what do you think is your best case for the proposition that a public employer has to ignore the spouse of the employee? Here the argument is they have to ignore a criminal conviction of the spouse. But you can imagine lots of other arguments. One common rule is an anti-nepotism rule that you can't be married to somebody who's working for the same general employer. And there's such a rule that applies to us federal judges. Certainly. Right? And anti-nepotism rules are routinely challenged and routinely sustained. So I'm asking where you go for the proposition that a public employer has to ignore spousal attributes. So I don't believe that we are asserting that the governmental entity here had to ignore this policy. I would assert that in this instance the allegations of the plaintiff's complaint, which have to be taken as true at this stage because it was ruled upon by the district court on a 12b6 motion, we allege that she was meeting all of the legitimate expectations of the employer that she did not. Somebody who was attacking a nepotism rule would make the very same allegation. I'm not asking what's in your complaint. I'm asking what is your best case. Right? Cases are not complaints. What is your best case for the proposition that a public employer must ignore spousal attributes? I think if you look at all of the circumstances in this particular case, it's the best case. Look, my question is not very hard. I am not asking about your complaint. I am not asking about the circumstances of this case. I am asking you for legal authority on a particular proposition. You can answer that you don't have any, and then we can proceed. But you cannot answer a question about legal authority by quoting to the facts of this case. I want you to answer my question. And I am trying to do that, Your Honor. I believe that the only response that I can give you in terms of a case would be the Montgomery case or the County of Sacramento case that says in instances where we are going to restrict someone's right to intimate association, which would be a policy that would impact someone's spouse, that there has to be a legitimate, reasonable basis for the policy. In other words, the answer is no. You don't have any such case. None. I would believe that that... It would surprise me if there weren't some out there, say, distinguishing between spousal conviction rules, spousal political action rules, and, say, nepotism rules. These are very common rules in public workplaces. If there was no distinction, that would be a big surprise to me. It seems to me there's stuff out there if one looks. I don't know whether it's favorable to you or not. But to say that there's just nothing there seems to me implausible. I do think that, at least in the employment law section in the state of Illinois, that convictions and how we look at convictions of individuals is certainly changing. And if Your Honors would give me the opportunity, I can certainly look and submit a post-memorandum on that particular issue. This is a subject you had to cover in your brief. After oral argument is not the time to do what you needed to do in your brief. Well, I would assert that in this instance, Your Honor, that the pretext that was in conjunction with the separation of this employee because of her relationship with her husband, in fact, creates a cause of action for the due process. Well, do you think that a nepotism rule is unconstitutional? I don't think a nepotism rule is unconstitutional if there is a legitimate basis. Why is that any different from somebody who is working for the cops can't be married to the robbers? Well, in this instance, Ms. Berger did not violate the policy. Her complaint states that she didn't violate the policy, so it's just her husband's status. Counsel, if the claim is that she didn't violate the policy, you need to be in state court. You're making a federal constitutional argument. It is, as I said in the last case, we see all too many cases where the lure of making a constitutional argument seems to dissuade people from making straightforward state law arguments. But we are here. We have to figure out whether there's a constitutional problem, not whether, as a matter of state law, she should be reinstated. But I do think that there is. And I recognize, Your Honor, that certainly the due process clause is not as broad as the tort law. And Your Honor has even indicated that rationale in the Christianson case again. But here I think we have a situation where the abuse of government power by the decision makers in this case, who specifically told Ms. Berger... You say you would not, your rationale does not challenge a nepotism law, though it seems to me the rationale in your brief would hold all nepotism laws unconstitutional because they infringe the right of intimate association. But assuming they are valid, why is it worse to have a law that says, we must assume they have this rule, that somebody who works for the cops can't be married to the robbers? Well, in this instance, I would... Not asking about this instance. In any instance. You have to discuss law rather than what are the facts of this case. Well, I think the law applying to the facts of this case is unique and makes it different than the nepotism provisions because here this particular employer is articulating that there's some reasonable basis for this policy, and yet they completely ignore enforcing it against anyone else. So I do think that the facts of this particular case make it different than the nepotism. Look, you're basically asking us to operate in a law-free zone. Take all the law, throw it away, ignore it, rule in my favor. That's not how courts work. I don't believe that... It didn't work in the district court. It's not going to work here. You have to make general arguments about the structure of the law, and given your concession that a nepotism rule is valid, you have to tell me why, as a matter of federal constitutional law, a requirement related to the spouse's criminal convictions is different. I think it's different here because it was never enforced against the individual. I'm not saying here. You're just coming back to this case. You have to tell me why, as a matter of constitutional law, one is different from the other. Here I would say it is because... The word here has to be eliminated from your vocabulary. In a due process claim where there is a deprivation of a right of a personal liberty that is indicated simply because the person is associating with their spouse and there is no other rational basis to support that policy, I believe it supports at least the completing stage. So why aren't you giving the opposite answer to my question about nepotism? Most married couples are capable of working just fine for an employer. One of the anti-nepotism rules applicable to federal judges is that nobody within the third degree of civil relation of any member of this court can be a law clerk for any other member of the court or indeed a member of the court so that the famous Morris brothers, Arnold Morris and Richard Morris, could no longer serve together on the Eighth Circuit because they're brothers. And one could say, that's ridiculous. They were both fine judges. One of them still is a fine judge. But you've already conceded that the nepotism rule is valid and now you've got to tell me why the criminal conviction rule is invalid given the validity of the nepotism rule. Well, the nepotism rule, I think, in the instance of being applicable to the judiciary is because there is a rational, objective basis constitutionally that there could be the appearance of impropriety, a conflict of interest. The nepotism rule is universal. I gave you this example because it was just extended recently. I will bet my bottom dollar that this county has a nepotism rule. And if it were enforced and there was a showing that there was an objective, reasonable basis for that, then I think that I couldn't meet the standard for a due process violation. I believe here that in the manner in which the Macon County failed to enforce this rule and Judge Bruce said that he looked at the policy and how the policy was applied. I hate to tell you this. Use the word here again. And the argument you're now making is not an argument based on the First Amendment or the due process right of intimate association. It's an equal protection class of one argument. That is, that the county has this rule. They've enforced it against my client and not against other people. You would then have to deal with the fact that the Supreme Court has said that equal protection class of one arguments do not apply in the employment relation. But the line of argument you're now making is not a due process or a First Amendment argument. Is there a due process argument? The due process argument that I believe that is a viable argument is that the abuse of power by the Macon County supervisors, senior personnel, and in fact the chairman of Macon County knowingly allowing that abuse of power, I would assert, was a deprivation of a constitutional right in this instance. Let's talk a little bit about the proper defendant here. Shouldn't you have sued the state of Illinois, not Macon County, as the proper defendant? I would assert that in the allegations of fact that we have clearly asserted properly that Amanda Berger was an employee of Macon County. The case law supports that Macon County can certainly be a joint employer with the state's attorney's office. And Amanda Berger was a Macon County employee who was simply assigned to work at the state's attorney's office. The allegations of the complaint establish she was required to follow Macon County policy, that Greg Mattingly, the chairman of the board, oversaw her as the direct supervisor, and that Nicole Kronke and Kim Tarvin, who were involved in this abusive process, also were employees of Macon County. So I would assert that we did sue the right person. The fact that the state's attorney's office is related to the state doesn't make any difference. Well, except that the only claim against the state attorney in this case was an intentional infliction, tortuous interference claim, which was a state claim. We did not make any kind of a federal claim against the state's attorney because the decision maker in the room when Ms. Berger was terminated was a Macon County attorney on behalf of the Macon County board. And I would then ask just to reserve my remaining time for rebuttal. Thank you. Certainly, Ms. Waller. Mr. Atkus. Good morning, Your Honors. May it please the Court, Michael Atkus on behalf of the dependents at Belize. I'd like to begin by addressing some of Judge Easterbrook's concerns and questions with respect to the difference between the rule involved with our facts and an anti-nepotism rule. And I would submit that there is no difference. In both such rules, the government needs to justify it only on a rational basis. I think it's reasonable and rational that the people who work for the cops can't be married to the robbers. It's rational for the state's attorney's office to avoid the appearance that there's a criminal element working within his office, especially at a high management level such as Ms. Berger had as the personnel director. I also think it's reasonable for the state's attorney to restrict access to confidential investigatory and prosecutory information from individuals who are associates of known felons. I think that answers the constitutionality of this decision and you cannot be married to a felon policy of the state's attorney's office. Mr. Atkus, let's talk a little bit about the district court's ruling. As I understand the sequence of the pleadings and then the ruling, Ms. Berger claimed in her amended complaint that she was terminated due to her association with her husband. Then in the amended complaint, she also states that she did not commit any violation of the employee handbook. Did the district court commit an error when it assumed a lack of disclosure caused Berger's termination? I would have to say that the district court's ruling did not necessarily reflect my reading of the amended complaint, not to say I disagree with the district court's decision. I think my reading of the amended complaint was more consistent with plaintiffs that her allegation that she was fired was not for the failure to disclose the fact that she was married to a convicted felon, but simply for the fact that she was. Okay. That answers my question. Thank you. Okay. I would like to take some time to discuss the fact that I believe the court can affirm on statutory grounds that don't even reach the constitutional issues, which is the concern that was raised earlier with respect to is it in fact the wrong defendant we have here. There's no basis in the complaint by which to hold Macon County liable for any deprivation under Section 1983. It's well established under Illinois law that the state's attorney is a state rather than a county official. This court's recognized the same in the McGrath v. Gillis case. Pursuant to statute, the state's attorney has complete control over his office and its internal functions and the ability to, I forget the exact words of the statute, but something along the lines of procure goods and services to function. So I think in the face of those rules of law, any factual allegation that the plaintiff here was an employee of Macon County versus the Macon County state's attorney is simply not well-planned and just flies in the face of what the law actually is here. I suppose people don't get paper checks anymore, so we don't know what would be on the check, or how it would be a direct deposit. Even a reading of the McGrath case, which sort of analyzes the Illinois state law cases on this point, will say that it doesn't even necessarily matter who's paying. When you're looking at this employment, the employment relationship here is based on the Illinois Constitution, which I'm going to feel bad if I'm wrong, but my understanding is vests the state's attorney's power in the judicial article. It actually turns out to be very complicated as a matter of Illinois law. The state's attorney is both a state and a county employee, depending on exactly what the functions are. Right, right. I think we've had a lot of trouble over the years with that dual-capacity status of state's attorneys in Illinois.  I don't believe there's a basis to conclude that the state's attorney would have been acting with final policy-making authority for the county under a Monell-type analysis. As far as with respect to counsel's claim here earlier today, that the decision-maker was a county attorney, I believe she said, who was not the state's attorney, that allegation is not in the complaint, as far as I'm aware of it. It's the first time I've heard the allegation that the decision-maker, in this case, was someone other than the state's attorney. In fact, even such an allegation would fly in the face of the Illinois law, which says that the state's attorney has total internal control of his office and his staff. A few other points to raise. The district court didn't address plaintiff's free speech theory on its merits, and we didn't brief that issue in the district court because the plaintiff had captioned her federal claim as one for the deprivation of intimate association. I must say I don't understand that part of the district judge's decision. The Supreme Court has held that it doesn't make any difference what law a complaint cites or whether it cites any at all because complaints plead grievances. They don't plead law. And here we have a decision by a district judge saying, well, you didn't plead the right law. That does seem to go smack in the face of established authority. Now, maybe it just doesn't matter. Ultimately, I don't think it matters here. I don't think that the allegations in the complaint state a claim for a free speech claim. I think it runs into a Garcetti problem. What we have here is the personnel director of the state's attorney's office making internal statements to the state's attorney concerning matters related to the state's attorney's office personnel handling of what amounts to HR issues. I think the issue is so-and-so may have violated the handbook by electioneering on county time. So-and-so may have violated this other employee's privacy rights by sharing confidential information with someone else. These are rules that are alleged to have violated the employee handbook, HR rules, being brought from the personnel director to her boss. That form of speech all seems to be within the ambit of the plaintiff's duties as personnel director.  I would direct the court to the Abkarian v. McDonnell case on that point where the plaintiff there was a head of the surgery department, I want to say at the UIC Medical College, and he had made some statements to some coworkers of his regarding some risk management issues, some fees that were being paid, some issues of employee abuse of substances, basically HR-type issues. And the court there held that those type of or that type of speech would have fell within the ambit of his general duties as the head of the surgical department. I would rely on that case for that point. The plaintiff's brief relies on my Polish grandmother rolling her grave, but I'm going to butcher this name, Szynowski case, which is a case against a former McHenry County state's attorney. That case, the speech there involved a subpoenaed grand jury testimony, which frankly I can't come up with a more disparate example between that and what's at issue in the complaint here. Finally, one more point with respect to the procedural due process claim, which Judge Easterbrook, you probably had the same issue with Judge Bruce's ruling on the procedural due process claim. On the merits, there's no allegations in the complaint to suggest that the plaintiff had a property right under Illinois law in her continued employment. You don't have to plead law. You plead grievances. Then the law comes later. Okay. Well, okay. She doesn't plead any facts to show any basis. You don't plead facts. You plead grievances. Illinois is a fact-plating state. The federal courts are not. There's no material in her complaint to suggest that she had a continued property right in order to plausibly suggest an entitlement to relief under a procedural due process theory. Anyway, plaintiff didn't... Don't worry about what's in the complaint. Plaintiff didn't respond. This fixation with complaints, given the language of Rule 8 and the Supreme Court's decision, just puzzles me. You can say she loses on a due process claim because she hasn't established that she has a property interest. It doesn't have anything to do with the complaint. It has to do with what state law is or maybe what a contract is. She loses on due process because she doesn't have a property right. She hasn't established that she has a property right. Anyway, plaintiff didn't address the procedural due process issue at all in her reply brief. I'm kind of under the assumption that she's abandoned that claim at this point. Reply briefs don't need to reassert things. It's one of the banes of our life that lawyers confuse the phrase reply brief with repeat brief. You don't have to repeat something in order to preserve it. Okay, well, I guess I shouldn't say that. Really well-argued cases don't have reply briefs at all because they have already anticipated the arguments the appellee will make. That's good advice, Judge. If there's no further questions, I'll waive the rest of my time. Okay. Thank you, Mr. Ratkus. Anything further, Ms. Wall? With respect to the requirement of Rule 8 and what the Supreme Court has indicated in terms of what has to be in a brief, I would assert that we have indicated a grievance with respect to the speech of Ms. Berger. And counsel will indicate, well, we're going to go right into this Garcetti issue. I would assert here that Amanda Berger, as the personnel director, certainly it was within her job duties to comment on people below her, but not on an elected official and not on Nicole Cronky, who was her supervisor. And in that instance, I would assert that she was speaking as a citizen when she reported to Greg Mattingly that the state's attorney was abusing funds of the county, that the state's attorney was breaking Illinois law and doing illegal things, as well as Nicole Cronky, who she reported for violating right to privacy in the workplace. I would assert that certainly we have alleged a sufficient grievance on the First Amendment and that all of that information was in the complaint in a sufficient manner to put the defendants on notice of that claim. Thank you. Thank you, Ms. Wall. The case is taken under advisement.